# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| KARI MAKURAT, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiffs,<br> v.<br><br>RAUSCH STURM ISREAL ENERSON & HORNIK LLP and ONEMAIN FINANCIAL GROUP LLC,<br><br>    Defendant. | Case No.: 20-cv-1162<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA") and the Wisconsin Consumer Act, Ch. 421-427, Wis. Stats.

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337 and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Kari Makurat is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from Plaintiff a debt allegedly incurred for personal, family, or household purposes.

5. Plaintiff is a "customer" as defined in the WCA, Wis. Stat. § 421.301(17), in that the alleged debt allegedly arose from a consumer loan, opened and used only for personal, family, or household purposes.

6. Defendant Rausch, Sturm, Israel, Enerson, & Hornik, LLP ("Rausch Sturm") is a Wisconsin Law Firm with its principal offices located at 250 North Sunnyslope Road, Suite 300, Brookfield, Wisconsin 53005.

7. Rausch Sturm is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8. Rausch Sturm is engaged in the business of collecting debts owed to others and incurred for personal, family, or household purposes.

9. Rausch Sturm is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

10. Defendant OneMain Financial Group, LLC ("OneMain") is a limited liability company with its principal offices located at 100 International Drive, 16th Floor, Baltimore, Maryland.

11. OneMain does substantial business in Wisconsin and maintains an agent for purpose of service of process in Wisconsin at C T Corporation System, 301 South Bedford Street, Suite 1, Madison, Wisconsin 53703.

12. OneMain is engaged in the business of issuing consumer loans and collecting the receivables associated with those loans.

13. OneMain is a "merchant" as defined in the Wisconsin Consumer Act, Wis. Stat. § 421.301(25), in that it extended credit to Plaintiff and other class members.

14. With respect to Plaintiff's and the other class members' alleged debts, OneMain is a "debt collector" engaging in "debt collection," as those terms are defined in Wis. Stat. § 427.103.

## FACTS

15. On or about July 26, 2019 Rausch Sturm, acting on behalf of OneMain, filed a small claims lawsuit against Plaintiff in Milwaukee County Circuit Court. The case was styled *OneMain Financial Group, LLC v. Kari L. Makurat*, Case No. 2019sc032975, *Compl. filed* July 26, 2019 (Milw. Cnty. Cir. Ct.) (the "Small Claims Case"). A copy of the docket sheet as of July 20, 2020 is attached to this Complaint as Exhibit A.

16. A default judgment was entered in the Small Claims Case on August 22, 2019.

17. On or about January 29, 2020, Rausch Sturm, acting on behalf of OneMain, filed an earnings garnishment notice in connection with the Small Claims Case.

18. A copy of the earnings garnishment notice was mailed to Plaintiff. A copy of this earnings garnishment notice is attached to this Complaint as Exhibit B.

19. Upon information and belief, Exhibit B is a form earnings garnishment notice, with information specific to Plaintiff inserted by computer.

20. Upon information and belief, Exhibit B is a form earnings garnishment notice, used by Defendants to attempt to collect alleged consumer debts.

21. Exhibit B is confusing, misleading, and unfair to the unsophisticated consumer.

22. An unsophisticated consumer would not know the amount outstanding on the judgment at the time Exhibit B was mailed. As a result, the unsophisticated consumer would have no way to know the amount of earnings that Defendants intended and would not know what steps (if any) to take in response to receiving Exhibit B.

3

23.  Exhibit B contains a "To the debtor" section, which states in part:

To the Debtor:

The creditor has been awarded a judgment against you or your spouse as indicated below. That judgment has not been fully paid. The creditor has now filed a garnishment proceeding against your earnings from the garnishee/employer. This means that the creditor is seeking to take some of your earnings to satisfy part or all of the judgment against you or your spouse.

The total amount of the creditor's claim is as follows:

| County of Judgment MILWAUKEE | Case Number 2019SC032975 | Date of Judgment August 22, 2019 |
|---|---|---|
| Unpaid balance on judgment | | $3,280.69 |
| Unpaid post judgment interest | | $.00 |
| Estimated costs of this earnings garnishment | | $127.50 |
| **Total amount owed by the debtor** | | $3,408.19 |

24.  The "To the Debtor" section of Exhibit B states that the "Total amount of the creditor's claim" is $3,408.19, including an "unpaid balance on judgment" of $3,280.69 and "estimated costs of this earnings garnishment" of $127.50.

25.  Exhibit B also contains a "To the clerk of court" section, which states in part:

To the clerk of court:

The creditor has commenced an earnings garnishment action against the debtor and the garnishee to collect the following unsatisfied civil judgment:

| Name of Debtor(s) KARI L MAKURAT | | County Of Original Judgment |
|---|---|---|
| Original Case Number | Date of Entry of Judgment August 22, 2019 | Amount of Original Judgment $3,408.19 |
| Transcript of Judgment Filed in This County on: | Case Number of Transcript | Amount of Judgment Unpaid $3,408.19 |

26.  The "To the clerk of court" section of Exhibit B states that the "Amount of Original Judgment" is $3,408.19 and the "Amount of Judgment Unpaid" is also $3,408.19.

27.  Exhibit B also contains a "To the Garnishee" section, which states in part:

4

THE STATE OF WISCONSIN, to the Garnishee:

The creditor has been awarded a court judgment that has not been paid. As a result, the creditor claims that the amount owed by the debtor is as follows:

| Unpaid balance on judgment | $3,408.19 |
|---|---|
| Unpaid post judgment interest | $.00 |
| Estimated costs of this earnings garnishment | $127.50 |
| **Total amount owed by the debtor** | $3,535.69 |

28. The "To the Garnishee" section of Exhibit B states that the "Total amount owed by the debtor" is $3,535.69, of which $3,408.19 is the "Unpaid balance on judgment" and $127.50 is the "Estimated costs of this earnings garnishment."

29. On the face of Exhibit B, it is impossible to determine the actual "unpaid balance on judgment" when Exhibit B was mailed. The "To the Debtor" section of Exhibit B states that the "unpaid balance on judgment" was $3,280.69 but the "To the clerk of court" and "To the Garnishee" sections of Exhibit B state that the "unpaid balance judgment" was $3,408.19.

30. As a result, on the face of Exhibit B, it is impossible to determine the actual "Total amount owed by the debtor" when Exhibit B was mailed, and thus the amount that Defendants intended to garnish. The "To the Debtor" section of Exhibit B states that the "Total amount owed by the debtor" was $3,408.19, but the "To the Garnishee" section of Exhibit B states that the "Total amount owed by the debtor" was $3,535.69.

31. Exhibit B is confusing, misleading, and unfair to the unsophisticated consumer.

32. Wis. Stat. § 812.44(b) states:

> Except as provided under par. (bg), no party may use a form substantially different from those in this subchapter as revised under this subsection. No party may alter those forms in a manner that may mislead any other party. If the court finds that a party has used a misleading form, the court shall award the aggrieved party actual damages, costs and reasonable attorney fees resulting from the additional proceeding.

5

33. The "To the clerk of court" section of Exhibit B was signed by Aimee S. Walsh, an attorney at Defendant Rausch Sturm.

34. An unsophisticated consumer, reviewing Exhibit B and seeing an attorney signature on Exhibit B would believe that the attorney had actually reviewed Exhibit B and would understand that Exhibit B was being mailed because it satisfied all legal requirements and was consistent with the requirements of Wisconsin law.

35. Upon information and belief, Attorney Walsh's review of Plaintiff's file and involvement in the collection of Plaintiff's debt was so superficial that it was effectively non-existent.

36. If Attorney Walsh had reviewed Plaintiff's file before Exhibit B was mailed, she would have realized that the amounts stated in Exhibit B were inconsistent with each other and that Exhibit B is misleading and potentially unintelligible, and would have corrected the amounts sought in Exhibit B.

37. If Attorney Walsh had reviewed Plaintiff's file before Exhibit B was mailed, she would have realized that the inconsistent information in Exhibit B was presented "in a manner that may mislead any other party."

38. Plaintiff reviewed Exhibit B.

39. Plaintiff was misled and confused by Exhibit B.

40. The unsophisticated consumer would be misled and confused by Exhibit B.

41. Plaintiff had to spend time and money investigating Exhibit B, and the consequences of any potential responses to Exhibit B.

6

42. Plaintiff had to take time to obtain and meet with counsel, including traveling to counsel's office by car and its related expenses, including but not limited to the cost of gasoline and mileage, to advise Plaintiff on the consequences of <u>Exhibit B</u>.

### *<u>The FDCPA</u>*

43. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.'") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Qualls v. T-H Prof'l& Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Long v. Fenton & McGarvey Law Firm P.S.C.*, 223 F. Supp. 3d 773, 777 (S.D. Ind. Dec. 9, 2016) ("While courts have found that violations of other

7

statutes ... do not create concrete injuries in fact, violations of the FDCPA are distinguishable from these other statutes and have been repeatedly found to establish concrete injuries."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,'"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

44. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15

8

U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

45. Misrepresentations of the character, amount or legal status of any debt and misrepresentations as to the proper party to pay, injure or risk injury to interests expressly protected by Congress in the FDCPA. *See Encore Receivable Management, Inc.*, 18-cv-1484-WED, 2019 U.S. Dist. LEXIS 134377 (E.D. Wis. Aug. 9. 2019); *Richardson v. Diversified Consultants*, No. 17-cv-4047, 2019 U.S. Dist. LEXIS 118786 *10-11 (N.D. Ill. July 17, 2019) ("the receipt of a communication misrepresenting the character of the debt (here, the amount owed) is the kind of injury that Congress sought to prevent through the FDCPA. 'Such an injury falls squarely within the ambit of what Congress gave consumers in the FDCPA: 'a legally protected interest in certain information about debts,' with 'deprivation of information about one's debt (in a communication directed to the plaintiff consumer) a cognizable injury.'" (internal citations omitted); *see also Pierre v. Midland Credit Mgmt., Inc.*, 2017 WL 1427070, at *4 (N.D. Ill. Apr. 21, 2017); *Saenz v. Buckeye Check Cashing of Illinois*, 2016 WL 5080747, at *1-2 (N.D. Ill. Sept. 20, 2016); *Bernal v. NRA Grp., LLC*, 318 F.R.D. 64, 72 (N.D. Ill. 2016) (holding that Plaintiff had standing to challenge misleading communication sent to him because the communication violated his "right to be free from such misleading communications"). Such misrepresentations may cause consumers to make incorrect decisions about their finances or make payments to incorrect parties.

46. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

9

47. 15 U.S.C. § 1692e(2)(A) specifically prohibits "the false representation of— the character, amount, or legal status of any debt.

48. 15 U.S.C. § 1692e(2)(B) specifically prohibits "the false representation of any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt."

49. 15 U.S.C. § 1692e(3) specifically prohibits "the false representation or implication that any individual is an attorney or that any communication is from an attorney."

50. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

51. 15 U.S.C. § 1692f generally prohibits "unfair or unconscionable means to collect or attempt to collect any debt."

52. 15 U.S.C. § 1692f(1) specifically prohibits "the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

### *The WCA*

53. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

54. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n.15, 596 N.W.2d 786 (1999) (citations omitted).

55. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

56. "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

57. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

58. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

59. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

60. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell*

*Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

61. Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer or a person related to the customer with such frequency of at such unusual hours or in such a manner as can reasonably be expected to threaten or harass the customer."

62. Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct . . . in such a manner as can reasonably be expected to threaten or harass the customer."

63. Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

64. Wis. Stat. § 427.104(1)(k) states that a debt collector may not: "Use a communication which simulates legal or judicial process or which gives the appearance of being authorized, issued or approved by a government, governmental agency or attorney-at-law when it is not."

## COUNT I – FDCPA

65. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

66. Count I is brought against Defendant Rausch Sturm.

67. Exhibit B states the amount that Defendants are attempting to garnish in a confusing, misleading, and unfair manner.

68. Exhibit B misrepresents to the unsophisticated consumer that it is an effective earnings garnishment notice even though it is misleading and potentially unintelligible.

12

69. <u>Exhibit B</u> misrepresents the degree to which an attorney was involved in Plaintiff's file and falsely implies to the unsophisticated consumer that an attorney approved the amounts stated in <u>Exhibit B</u> as correct.

70. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692(2)(B), 1692e(3), 1692e(10), and 1692f, and 1692f(1).

## COUNT II – WCA

71. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

72. Count II is brought against both Defendants.

73. <u>Exhibit B</u> states the amount that Defendants are attempting to garnish in a confusing, misleading, and unfair manner.

74. <u>Exhibit B</u> misrepresents to the unsophisticated consumer that it is an effective earnings garnishment notice even though it is misleading and potentially unintelligible.

75. <u>Exhibit B</u> misrepresents the degree to which an attorney was involved in Plaintiff's file and falsely implies to the unsophisticated consumer that an attorney approved the amounts stated in <u>Exhibit B</u> as correct.

76. Defendants violated Wis. Stat. §§ 427.104(1)(g), 427.104(1)(h), 427.104(1)(j), and 427.104(1)(k).

## CLASS ALLEGATIONS

77. Plaintiff brings this action on behalf of a Class, consisting of:

(a) all natural persons in the State of Wisconsin, (b) who were sent an earnings garnishment notice in the form of <u>Exhibit B</u> by Defendant Rausch Sturm, where (c) the amounts stated in the "Total amount owed by the Debtor" fields of the "To the Debtor" and the "To the Garnishee" sections were inconsistent with each other, and (d) the alleged debt was incurred for personal, family, or household purposes, and (e) the earnings garnishment notice in the form of <u>Exhibit B</u> was

13

mailed between July 28, 2018 and July 28, 2019, inclusive, and (f) was not returned by the postal service.

78. Plaintiff also brings this action on behalf of a Subclass, consisting of:

(a) all natural persons in the State of Wisconsin, (b) who were sent an earnings garnishment notice in the form of <u>Exhibit B</u> by Defendant Rausch Sturm, (c) seeking to collect an alleged debt owed to Defendant OneMain, where (c) the amounts stated in the "Total amount owed by the Debtor" fields of the "To the Debtor" and the "To the Garnishee" sections were inconsistent with each other, and (d) the alleged debt was incurred for personal, family, or household purposes, and (e) the earnings garnishment notice in the form of <u>Exhibit B</u> was mailed between July 28, 2018 and July 28, 2019, inclusive, and (f) was not returned by the postal service.

79. The Class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of the Class.

80. There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether <u>Exhibit B</u> violates the FDCPA and/or WCA.

81. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

82. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

83. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

84. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Classes and against Defendants for:

14

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: July 28, 2020

**ADEMI & O'REILLY, LLP**

By: /s/ John D. Blythin
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com